**CHENG FU SHENG, Plaintiff,**

v.

**Bruce G. BARBER, as District Director of Immigration and Naturalization Service, San Francisco, and David H. Carnahan, as Regional Commissioner of the Immigration and Naturalization Service, Defendants.**

**LIN FU MEI, Plaintiff,**

v.

**Bruce G. BARBER, as District Director of Immigration and Naturalization Service, San Francisco, and David H. Carnahan, as Regional Commissioner of the Immigration and Naturalization Service, Defendants.**

Nos. 35662, 35681.

United States District Court
N. D. California, S. D.

Sept. 28, 1956.

Fallon & Hargreaves, San Francisco, Cal., for plaintiffs.

Lloyd H. Burke, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for defendants.

GOODMAN, District Judge.

The plaintiffs in these two actions both seek review of orders of the Regional Commissioner of the Immigration and Naturalization Service denying their applications pursuant to Section 6 of the Refugee Relief Act of 1953, 67 Stat. 400, 50 U.S.C.A.Appendix, § 1971d, for adjustment of their non-immigrant status to that of aliens lawfully admitted for permanent residence. They ask declaratory judgments that their applications may not be denied, as they were, on the ground that they are of a class of aliens which Congress did not intend to come within the purview of the Refugee Relief Act. They have moved

for summary judgment, and defendants have countered with motions to dismiss. The motions, in each case, have been submitted upon the record of the proceedings before the Immigration and Naturalization Service.

The record reveals that plaintiff, Cheng Fu Sheng was born on June 12, 1925 in the city of Chia, Honan Province, China, where he lived until 1944 when he enlisted in the Chinese Nationalist Airforce. From June, 1945 until December 1946 he trained in the United States as a member of the Chinese Nationalist Airforce. Thereafter he served as a member of the Nationalist Airforce in China until 1949 when the mainland fell to Communist forces and he was transferred to Formosa. On June 9, 1952, he again entered the United States as a member of the Chinese Nationalist Airforce for advance training. On October 21, 1952, when his training unit left the United States to return to Formosa, he deserted from the Chinese Nationalist Airforce and remained in this country. On November 3, 1952 he voluntarily presented himself to the Immigration and Naturalization Service and explained that he had deserted his airforce unit and remained in the United States because he considered the Chinese Nationalist Government to be a corrupt dictatorship to which he could no longer give his allegiance. On December 23, 1952 he was arrested in deportation proceedings. A hearing was had on March 13, 1953, and on December 2, 1953, he was granted voluntary departure with an alternative order requiring deportation in the event he did not depart voluntarily. Meanwhile on November 3, 1953, he had filed his application pursuant to Section 6 of the Refugee Relief Act of 1953 for adjustment of his status to that of an alien admitted for permanent residence.

Plaintiff Lin Fu Mei was born on March 27, 1924 in the city of Foo Chow, Fu-kien Province, China where he lived until 1945 when he enlisted in the Chinese Nationalist Airforce. He served in China until 1948 when he was trans-

ferred to Formosa. On February 12, 1953, he entered the United States as a member of the Chinese Nationalist Airforce for 11 weeks training. At the end of this period when his training unit left the United States to return to Formosa, he deserted and remained in this country. He was subsequently arrested in deportation proceedings and testified in such proceedings that he had deserted his airforce unit and remained in the United States because he considered the Chinese Nationalist Government to be totalitarian in character and a police state. On December 23, 1954, during the course of the deportation proceedings he filed his application pursuant to Section 6 of the Refugee Relief Act of 1953 for adjustment of his status to that of an alien admitted for permanent residence.

Section 6 of the Refugee Relief Act of 1953 provides that "Any alien who establishes that prior to July 1, 1953, he lawfully entered the United States as a bona fide nonimmigrant and that he is unable to return to the country of his birth, or nationality, or last residence because of persecution or fear of persecution on account of race, religion, or political opinion * * * may, not later than June 30, 1955, apply to the Attorney General of the United States for an adjustment of his immigration status. If the Attorney General shall, upon consideration of all the facts and circumstances of the case, determine that such alien has been of good moral character for the preceding five years and that the alien was physically present in the United States on the date of the enactment of this Act (August 7, 1953) and is otherwise qualified under all other provisions of the Immigration and Nationality Act (chapter 12 of Title 8) except that the quota to which he is chargeable is oversubscribed, the Attorney General shall report to the Congress all the pertinent facts in the case." Section 6 further provides that if, during the session in which a case is reported or prior to the end of the next session, Congress, by concurrent resolution, approves the ad-

mission of such alien for permanent residence, the Attorney General is authorized to record his lawful admission, but if the Congress does not give such approval within such time or if either the Senate or the House by resolution states it does not approve the admission of such alien for permanent residence, the Attorney General shall thereupon deport him. By regulation, 8 C.F.R. §§ 481.1–481.11, the Regional Commissioners of the Immigration and Naturalization Service have been designated as the delegates of the Attorney General to determine whether an applicant meets the requirements specified in Section 6 for referral to the Congress. To assist the Regional Commissioner, findings and recommendations are to be submitted to him by an examining immigration officer.

Denial of the application of plaintiff Cheng was initially recommended by the examining officer of the Immigration and Naturalization Service on dual grounds: (1) that, having committed the crime of desertion, he is not admissible to the United States under the Immigration and Nationality Act, 8 U.S. C.A. § 1101 et seq., and (2) that he is not unable because of fear of persecution on account of race, religion, or political opinion to return to the country of last residence, Formosa. The Regional Commissioner did not follow this recommendation. He ruled that since Cheng had been present in Formosa only upon military orders, his country of last residence was China. He also ruled that desertion was not a crime involving moral turpitude, and that Cheng was not inadmissible under the Immigration and Nationality Act by reason of having committed such crime. However, by order of October 4, 1955, he denied Cheng's application on the ground that, in view of Cheng's desertion, he had failed to establish good moral character. On October 19, 1955, this order was withdrawn and the case remanded to the District Director to give plaintiff an opportunity to present evidence to rebut the conclusion that he failed to establish good moral character.

On December 9, 1955, the examining officer again recommended the denial of Cheng's application, but this time on the ground that Cheng is of a class of aliens which Congress did not intend to come within the purview of the Refugee Relief Act, to wit, members of the armed forces of a foreign government allied and supported by the United States in its defense against communistic aggression. He made no finding upon the issue of Cheng's moral character. On January 13, 1956, the Regional Commissioner ordered Cheng's application denied in accordance with the recommendation of the examining officer. It is this order which Cheng seeks to have reviewed in the present proceeding.

Denial of the application of plaintiff Lin was recommended by the examining officer, in the first instance, on the ground that Lin, as a member of the armed forces of a foreign government allied and supported by the United States in its defense against communistic aggression, is of a class of aliens which Congress did not intend to come within the purview of the Refugee Relief Act. On February 1, 1955, the Regional Commissioner ordered Lin's application denied in accordance with this recommendation. It is this order which Lin asks this Court to review.

The holding of the Regional Commissioner that plaintiffs are of a class of aliens which Congress did not intend to come within the purview of the Refugee Relief Act is at odds with the plain language of Section 6. Section 6 states unequivocally that *any* alien who meets the requirements therein specified shall have his case reported to Congress for its consideration. The function of the Attorney General is only to determine whether the alien meets the statutory specifications.

The legislative history of the Refugee Relief Act also demonstrates that the

Regional Commissioner has misconstrued the intent of Congress. In addition to providing for the adjustment of the status of refugee aliens *within* the United States, the Refugee Relief Act also provides for the issuance of special non-quota immigration visas to *particular classes* of alien refugees *outside* the United States. When the Act first passed the House as House bill 6481, Section 6 was not in its present form, but provided that the Attorney General might adjust the status of aliens *within* the United States who were members of certain of the statutory classes of aliens who, under the other provisions of the Act, might be granted non-quota immigration visas, if they were *outside* the United States.[1] By Senate amendment, concurred in in Conference, the Section 6 which became law was substituted for the original House version.[2] By this amendment, the Congress indicated that it did not wish the adjustment of the status of alien refugees *within* the United States to depend either upon their membership in predetermined statutory classes of aliens or upon policy decisions of an administrative official or agency. The Congress clearly expressed its desire to determine for itself, on the basis of the particular facts of each case, whether an alien who meets the requirements specified in Section 6 should be accorded the status of an alien admitted for permanent residence.

The Regional Commissioner erred in assuming a function which the Congress has reserved to itself. In both cases, defendants' motion to dismiss is denied, and plaintiff's motion for summary judgment is granted. The orders of the Regional Commissioner denying the applications of plaintiffs Cheng and Lin for adjustment of their status pursuant to the Refugee Relief Act of 1953 are vacated and both cases are remanded for further proceedings, for the determination of the questions which the statute requires the Attorney General to decide.

---

1. See 99 Congressional Record 10185, 83rd Congress, 1st Session.

2. See 99 Congressional Record 10248–50, 83rd Congress, 1st Session.